Call the case. State of Ilinois v. Convatec and 180 Medical. Please step up and identify yourself, whoever is going to present. Prior to the hearing for the appellant, your honor, with me is Mr. Wetland and Mr. Zolno. Okay. I'm Jennifer Aronoff on behalf of the defendant's affiliates, and my colleague is David Bruce. All right. You know our procedure. We're lenient as long as you don't decide to make a Bible out of it. All right. So you may start. And understand that is not a microphone, it's a recorder. So please speak up. Thank you, Your Honor. Good morning, Justices. Like visa court, and with your permission, I'd like to say a few words about the appellant. We believe that the circuit court should be reversed, and we don't believe there's any argument to support it. I must admit that I find this case exceedingly simpler than the complicated talking points people debate about whether Judge Scalia meant this or that in the Barat case. The issues of assignability and interest of person are both logically and under the acts pretty straightforward. As a matter of fact, they just carry on what private parties as public interest attorneys like our firm's practice has been doing for many, many years, finding ways to bring wrongdoers to light. And the state has given more and more opportunity for that, and this statute is an example. Now, if you have assignability, there isn't any need to have a restriction unless one is there, because the concept is a giving. And indeed, a careful, if not breezy, reading of the act under consideration has no restriction or assignability. To say that the state, through its insurance key TAM provisions, assigns less than all of the causes of action is to engage, we believe, in rewriting the statute. The purpose of the statute is real. Counsel, what was the reason for using the word interested in Section 15A? The False Claims Act doesn't say an interested person. It says any person. Why use different language here? I think because the, you know, I don't know. My experience with the state legislature is not one where I've sat down and figured out what I'm going to say here, there, and other things, so I can't predict. But I can say that in sitting back and looking at an interested person, one can easily say that it means someone who has an interest in the transaction, i.e., has information that would be useful to the implementation of the act. What was his interest? Well, his interest is that he has information, and his interest is that he brings it to the proper authorities in order for it to move forward. How does that connect to him? Well, there is no standing requirement, and I think many of us like to believe that citizens still like to contribute to a better society. KTAM and False Claims Act are part of that basis. The law is pretty clear that in this case, by looking at the statute, an interested person is someone who can help advance the purposes of the statute, which is to prevent insurance fraud. But where is the damage to him or to anybody in the state of Illinois? Well, there isn't any necessity under the statute for damage to him. But this was to the insurance company, so. Well, we all know, Your Honor, when the law is violated, the state is offended. So when a law is not followed, the state has an interest in making certain that its laws are followed, and assigning that interest to a person under the Insurance Key Fraud Act is precisely what the state legislature meant. But how attenuated is any concern or any harm to Mr. Feingold to the actions of Comtech? I mean, it's fairly attenuated, isn't it? Well, Mr. Feingold, and I refer back to my earlier remarks, is an interested person. He doesn't have to be affected under the statute. But, in fact, he is. He was the patient who got the wrong material. He wasn't. When you say the word wrong, he got the probably the more expensive product. No, he got the wrong material because his doctor ordered X and he got Y. And the medical device that was useful for him was for prostate cancer, and the medical device that 180 fraudulently obtained through its forms was one for AIDS. It had nothing to do with him at all. So he could have sat back and said, what the heck is going on? This doesn't make any sense to me. So was there a claim that because he was prescribed or because he received the wrong type of catheter that he was somehow medically harmed? No. Medical harm is not necessary under the statute. But was he medically harmed? Because you brought up the issue that he got the wrong prescription. He got the catheter that was for a patient who has AIDS as opposed to for cancer. And I don't understand. I have no MD behind my name. So when I see catheter with lubrication as opposed to catheter with a kit, I think in terms of the ease with which one might utilize the device. Well, without doing any more legal terpsichore than you suggest, since I'm not a medical maven as well, I think in this case, Justice Cobbs, that the issue of whether this harmed him is irrelevant. The fact that he received, or put it another way, the fact that the doctor signed a form, we say in our complaint fraudulently, that upgraded and made this something that was not medically necessary for him is a violation of the act. Now, it also has other consequences. It increases the cost of health care in a given jurisdiction. And if, in fact, Mr. Feingold was not able to use, for some reason, this so-called upgraded material, then it would have had a different cost because he would have had to have gone back and got something else. I don't think there's anything in the record, and I don't know of my own personal knowledge, any better answer than that. Counsel, Section 15A, I'll bring you back to it again. It begins by saying an interested person, including an insurer, may bring a civil action for a violation of this act for the person and for the state. So when you've got these other key false claims, there's never a personal claim, right? If someone's not paying their sales tax, the individual isn't hurt. But the state is, and they sue for them. But this says, for the person, this suggests that the individual would have his own claim. Doesn't it? I mean, so it's one thing to have the word interested there, but then when you read the rest of the sentence, they're contemplating that that person will have a claim of their own, like an insurance company would, for example. Right. It's possible that a person would have a claim, but it's not necessary under the statute for an interested person to have a claim. An insurance company would be an example, although it might be far-fetched. One of the cases that has interpreted the statute referred to the example of an insurance person. I think it was the Liebowitz case in which they said it was unlikely that an insurance company would have an insurer be an interested person, but not impossible. Finally, I'd like to point out that there's no reason to depart from the logic and conclusion of the panel's decision led by Justice Hayman, which has examined this very issue about whether or not the State may assign a cause of action, whether or not it's the sovereign cause of action or an action for damage. And I would urge the Court to continue to follow that rule. Subject to any questions, I believe I've concluded my argument. Thank you. Thank you for your courtesy. Thank you. Good morning, Your Honors. For reasons I'm happy to discuss in more detail, we believe that the Liebowitz case was wrongly decided, and it is not binding on you. But even if you were to agree with that holding, the dismissal in this case should also be affirmed for two other reasons. First, the complaint alleges the submission of false claims by two non-Illinois companies to a non-Illinois insurance company, putting it outside the scope of Illinois law. The relevant conduct could not have occurred in Illinois under any circumstances. Second, the complaint fails to allege the submission of false claims at all, let alone with the particularity required in fraud pleadings. Ultimately, this is a case about a plaintiff who got what his doctor ordered for years, does not allege he was harmed in any way, and now wants to sue, claiming his insurance company was defrauded. The decision below should be affirmed for the reasons articulated by the Circuit Court. So are you saying that if we were to follow Liebowitz, we would have to agree with the plaintiff that he's an interested person? I think that is the holding of Liebowitz. I would like to say otherwise. But Liebowitz essentially throws the door open and says that anyone can be a plaintiff under this law. We think that's wrong. We think that it requires a plaintiff to have standing of his own, and they can't derive that standing from an assignment of the state's law enforcement interests. It's something that the state can't assign. It's not a cause of action like the damages that are assigned per Vermont agency and SCSHD in a false claims act case. It's untethered to any specific claim. It's essentially a prosecutorial assignment. So I think that would be our position, but we think it's wrong. We think that if you read the law, if you read, as you pointed out, the fact that this one uses interested person, the False Claims Act doesn't, that means something. And it means that you have to have your own standing. You have to be able to allege your own harm. And that's a constitutional way, I think, a constitutionally consistent way of reading this law. It's not the way the Liebowitz court read it, but if you read the law the way they did, I think it creates real constitutional questions about the nature of standing because it lets uninjured, uninterested people come to the court bringing claims that don't affect them in any way, that won't be redressed by what the court decides in any way. It may not be redressed, but this gentleman did receive the catheter, right? He underwent surgery and was given a catheter that he would say was the wrong catheter. He was given the wrong catheter for fraudulent reasons because somebody was trying to make more money out of it. That is what Mr. Cherry said, and that is what their brief said, but that is not what their complaint says. The complaint simply says that the doctor sent in one form, and then another form was sent back to him with a different catheter on it, and he signed that. Actually, the complaint does not say that he signed that, but in fact, the doctor did sign that, and that's the product that was delivered. So nowhere in that sequence of events is there any fraud alleged, any misrepresentation, or any false claim. The doctor ordered the catheter that he received, and he got it for years. So there is, I mean, I would say that the briefs increasingly become untethered from what's in the complaint. Point taken, but, I mean, he did receive, I mean, in terms of having some interest in this controversy, to say it a little more broadly, I mean, this guy was the patient who received the product, right? Maybe it was fraudulent, maybe it wasn't, maybe it was properly alleged or not, but when you're saying he's not interested, we're not talking about somebody who's walking off the street and hearing about this. We're talking about somebody who actually had the product put into him. That's true, but he has not alleged any harm, and it's not enough to just have sort of a But you're talking about interested right now, not harm, right, as an interested person. Well, I think interest is used in the Illinois Supreme Court standing cases as sort of a stand-in for standing. It's a legal injury. You can't just have an amorphous interest. You think that's what they meant to do, just sort of reference the general? You have to be interested in the outcome somehow. Yeah, I mean, I think legal interest means a legal interest, a legally cognizable interest of the type that Mr. Feingold does not have. It's harm to a legally cognizable interest. So a whistleblower wouldn't have any ability to bring this claim? Well, a whistleblower that has no legal injury himself. An insurance company is the defrauded company. They're the victim, and they would have the right to bring this claim. In fact, there's But a whistleblower. How about a whistleblower? So somebody who works for the person who's submitting the fraudulent claim who says, This isn't right. This is bothering my conscience. I'm going to turn them in. That person has no interest. That person cannot sue under this. That's what you're saying. I think they might have an interest in reporting wrongdoing to the state of Illinois that could then choose to pursue or not pursue the claim, but that does not give them the ability to bring a lawsuit. Under no other circumstances does that type of self-expressed interest give anyone the right to bring a lawsuit, to be a litigant, as Mr. Feingold is attempting to do here. Well, the False Claims Act does. I mean, the only difference between the False Claims Act and this is the word interest rate. I mean, this is set up pretty much like a false claim. So it's similar, but it is not as similar as it seems at first glance. I think the key difference is that the False Claims Act involves actual damages that is an injury in fact to the government always, under all circumstances. And it's that damages interest that is assigned to the key tamer later that gives them the ability to pursue the case. This case never involves an injury in fact to the government. It's an injury in fact to an insurance company that's not even required to be part of the case. We don't know what Mr. Feingold's insurer would think about the allegations in this case because they're not required to be here. So their interests are sort of being litigated in their absence. And it also isn't anything specific. Damages in the False Claims Act case are tied to a specific claim. They're like a regular chosen action, sort of regular damages. This is a law enforcement interest. It's just, it's purely punitive. If you look at the way this law is set up, the False Claims Act, the penalties include troubled damages and civil penalties. This law, it's civil penalties and an assessment. But the statute very carefully does not use the word damages because it acknowledges that there aren't damages. It's not redressing damages. It's not giving damages. It's simply allowing a different means of enforcing Illinois' criminal insurance fraud law. And that is very different. I mean the False Claims Act at the edges may sometimes incorporate a criminal statute. But this one requires a criminal violation to be pled to even proceed in the first place. And that is like the totemic exercise of the state's sovereign law enforcement authority. It's not akin to any sort of civil regular claim. So it's very different structurally in meaningful ways. And that's why the Leibowitz case gets it wrong because they sort of conflate the two. And they're different in a very meaningful way. Do Your Honors have any other questions? I'm happy to discuss this more. No, I think you've done your job. All right. Well, so for the reasons we've articulated, Mr. Feingold has no interest in this case. He's not been harmed. And the dismissal below should be affirmed. Thank you. Thank you. Just a few quick points. Number one, there is jurisdiction in Illinois. The doctor was in Illinois when he approved the form, which is the central part of the form. The patient who received the medical device unordered was Illinois. The fraudulent upcoding could not have occurred without the doctor having signed it in Illinois. And it seemed to me it would strain credulity to say if all these things happened in Illinois, that Illinois would be powerless. The second form is the fraud. 180 Medical sent a form that was not, no pun intended, what the doctor ordered. And this was the fraud. A further answer, Justice Ellis, to your question about interest in person. If we start out by focusing on the purpose of the act, which is to prevent fraud, then it's not a big stretch to say anyone who can help reach that purpose could fall into the category of an interest in person. And, in fact, 15A talks about the insurer being an additional person, contemplating that this is also like a TTAM statute. I think that covers the points on the rebuttal the defendant has made in their answering argument. Unless you have any questions, I'll stand down. Thank you very much. Thank you. It's just a shame that the legislature wasn't a little more specific in their definitions. Well, I can understand it, and I urge you to accept my evidence. We're not saying that you're wrong. We're just saying there aren't enough attorneys on the legislature anymore. You've got a lot of young kids that have no experience. I would suspect that that's a lament of the judiciary all the time. Yeah, that's my personal. That's not their view. Thank you.